J-A26038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| REVOCABLE LIVING TRUST OF PHILIP E. TOBIAS DATED AUGUST 17, 2010 | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: RUSSELL L. TOBIAS, INDIVIDUALLY AND AS TRUSTEE OF THE REVOCABLE LIVING TRUST OF PHILIP E. TOBIAS | : : : : | No. 2176 EDA 2020 |

Appeal from the Order Entered November 5, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 2017-X3119

| | | |
|---|---|---|
| ESTATE OF TOBIAS, PHILIP E., DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: RUSSELL L. TOBIAS, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF PHILIP E. TOBIAS, DECEASED | : : : : : | No. 446 EDA 2021 |

Appeal from the Order Entered November 4, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 2011-X1039

BEFORE:    BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED JANUARY 19, 2022**

Russell L. Tobias (Appellant) appeals from the orders entered at two related dockets in the Montgomery County Court of Common Pleas, Orphans' Court: (1) the Revocable Living Trust of Philip E. Tobias (the Trust); and (2)

the Estate of Philip E. Tobias (the Estate).[1]  Appellant is the trustee of the Trust, as well as the executor of the Estate.  The underlying orders dispose of objections, filed by Appellant's siblings, to his accountings of the Trust and Estate.  On appeal, Appellant challenges the trial court's: (1) surcharge of more than $1.7 million, representing the assets he has not transferred from the Estate to the Trust; (2) surcharge of carrying costs for the testator's residential property; (3) surcharge of Appellant's executor's commission; and (4) partial denial of Appellant's request, as trustee, for attorneys' fees, as well as the surcharge against him for half of the awarded attorneys' fees.  After careful review, we: (1) vacate the $1.7 million surcharge; (2) affirm the surcharge of carrying costs for the residential property; (3) reverse the surcharge of Appellant's executor's commission and vacate the denial of his request for additional commission; and (4) vacate the attorneys' fees rulings. We remand for further proceedings consistent with this memorandum.

## I.  Facts & Procedural History

We glean the factual history, which is largely not disputed, from the trial court's opinion and the pleadings.  Appellant's father, Philip E. Tobias (Decedent), was both the settlor of the Trust and the testator in the Estate.

---

[1] Appellant filed separate notices of appeal in the Trust and Estate matters, thus complying with **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) ("[W]here a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case.").

After his wife's death, Decedent created the underlying revocable living trust on August 17, 2010. Trial Ct. Op., 1/12/21, at 1, 3 (unpaginated). However, the trust was not funded during Decedent's lifetime. *Id.* at 1. He died on February 14, 2011, survived by his four children: Appellant, Robin Crowley, Deborah Tobias,[2] and Eric Tobias. *Id.* Decedent's

> will, dated October 4, 2010, was duly probated on March 18, 2011, and letters testamentary were granted to [Appellant] on March 19, 2011. The will provides for [D]ecedent's personal property to be divided into equal shares for his four children, and the residue of his estate to pour into his trust dated August 17, 2010, for distribution as directed therein.

*Id.* Appellant has reported the total gross value of the Estate was more than $6.6 million; a majority consisted of stocks and shares. First & Final Account of Executor, 1/3/18, at 1.

Upon Decedent's death, Appellant also became the sole trustee of the Trust. The Trust provided

> that, upon settlor's death, the trustee shall divide the remainder of the trust estate into a sufficient number of equal shares so that there shall be one share set aside for each then-living child of settlor. The trustee may distribute to each of the four children so much of the income and principal of his or her trust as the trustee may from time to time deem necessary or advisable, taking into account such funds each child receives from other sources. Any net income not so distributed shall be added to and become part of the principal.

Trial Ct. Op. at 1-2.

---

[2] Robin and Deborah are the objectors and appellees in this matter.

At this juncture, we note Decedent owned a house in Abington, Pennsylvania, as well as a shore house in Long Beach Island, New Jersey. Decedent and his wife also owned a business, which manufactured printing equipment, located in Ivyland, Bucks County. "[D]ecedent and his wife obtained state funding in the form of a loan," from Bucks County Economic Development Corporation (BCEDC), to purchase the commercial property, and the loan terms required that BCEDC be listed as the owner on the deed until the loan was paid. Trial Ct. Op. at 2.

> After the loan was paid in full, the commercial property deed was transferred jointly to the couple (as individuals) and the business . . . on Feburary 3, 1994. This new deed was not recorded. The value of the commercial property [in 1994] was $1,034,000. BCEDC retained legal title to the commercial property, charging [the business] $500 per year to do so. The $500 fee has been paid annually by Appellant since [D]ecedent's death. It is common for equitable owners not to record deeds after completing payment for property in order to avoid the expense of transfer taxes. N.T., 10/22/19, at 7-18, 74, 78

*Id.* at 2-3 (some record citations omitted).

As stated above, Decedent died in February of 2011, and letters testamentary were granted to Appellant in March of that year. In December **2015**, the three siblings, Robin, Deborah, and Eric, executed a "Receipt, Release and Agreement of Reimbursement Agreement" (the 2015 Release). The 2015 Release provided that each Estate beneficiary would receive $15,000, and "[t]hereafter, the remainder, $5,635,803.70, shall be added to the Trust . . . . The Trust's estate shall be divided into four equal shares . . . for each Beneficiary." Appellant's Petition for Adjudication, 1/3/18,

Attachment, 2015 Release, at 3. While the Release stated a deadline of December 31, 2015, for the distribution of $15,000 to each beneficiary, no timeframe was set for the transfer of the Estate assets to the Trust.[3] ***See id.***

Approximately 20 months later, on August 22, 2017, two of Appellant's siblings, Deborah and Robin (collectively, Appellees), commenced the underlying Trust matter by filing a "Petition to File Account." Appellees averred they had not received: any statement from Appellant concerning the Trust; "any documentation or accounting of the determination of the residue of Decedent's estate, which passed to the Trust[;] nor any confirmation that the residue of Decedent's estate, in fact, was transferred to the Trust." Appellees' Petition to File Account, 8/22/17, at 7.

On November 3, 2017, the trial court granted Appellees' petition and directed Appellant to file an account of his administration as trustee of the Trust, "with an annexed account . . . of his administration as Executor of the Estate[.]" Order, 11/3/17.

_____

[3] At the hearing, Deborah testified to the following: she received the 2015 Release when "things weren't so formal[;]" she was told "the purpose . . was to remove the delays and the excessive [costs] for the accounting through the Court[;]" she was "requested to sign [it] within a ten-day period or the offer would expire[;]" and she signed "it to help out[ and] move things along." N.T., 10/22/19, at 164, 166. Deborah believed she "was signing off on the accounting to that date and . . . then the estate would be distributed." ***Id.*** at 167. She did not consult with an attorney, and she "assumed that everything would be done in the best interest for" her. ***Id.*** at 167, 185.

On January 3, 2018, Appellant filed a first accounting of the Trust, covering the seven-year period between August 17, 2010, and November 30, 2017. This accounting reported that 10 days earlier, on November 20, 2017, the Trust received stocks, bonds, and shares, with a total value of $4,957,744.36. First Account of Trustee, 1/3/18, at 3. The current "market value" of those assets, as of November 30th, was $4,896,544.59 (approximately $62,200 less than when the assets were transferred 10 days earlier). *See id.* at 4. No other property was listed as a Trust asset. The Trust has made no disbursements or distributions. The account further stated the principal balance would be subject to: court filings fees of $1,957; legal fees of $5,000 to Mannion Prior, LLP (Mannion Prior),[4] in connection with the audit of the Trust; and any other legal fees and expenses that Appellant, as trustee, would incur in connection with any objections filed. *Id.*

On the same day, Appellant also filed a "First and Final Account" of the Estate.[5] This accounting covered the period from December 29, 2015, through November 30, 2017. The accounting reported a "Gross Estate" value of $6,644,641.76. First & Final Account of Executor at 1. Of this amount,

_____

[4] Mannion Prior remains Appellant's counsel of record in these appeals.

[5] This accounting of the Estate does not appear in the certified electronic appeal transmitted to this Court on appeal. A copy, however, was included in Volume I of Appellant's reproduced record, at pages 407 through 438.

distributions totaling $4,957,744.36 were made to the Trust on November 20, 2017. *Id.* at 2, 10.

## II. Appellees' Objections to the Accountings of the Trust and Estate

On February 2, 2018, Appellees filed 29 enumerated objections to the accountings of both the Trust and Estate. With respect to the **Trust**, Appellees averred: (1) for almost seven years after Decedent's death, Appellant "complete[ly] abdicat[ed] his fiduciary duties as trustee . . . to collect any assets on behalf of the Trust," and only did so after Appellees "retained legal counsel and petitioned [the] Court for an" accounting; (2) although Appellant "received some assets from the Estate on November 20, 2017, he still has not collected all of the Estate assets, including cash and real estate[;]" (3) Appellant also failed to comply with the terms of the Trust to "divide the Trust into four separate shares upon" Decedent's death; (4) Appellant should be surcharged for the losses caused by these failures to act; and (5) Appellant's proposed payment of attorneys' fees of $5,000 was excessive. Appellees' Objections to First Account of Appellant, 2/2/18 (Objections), at 3.

Appellees also made the following objection (Objection #8), which ultimately resulted in the trial court's imposition of a $1.7 million surcharge against Appellant:

> 8. Objection is made to [Appellant's] valuations of the Trust's assets, which, as stated, are identical to the valuations of the same assets in the Estate Account, although at different valuation dates. To the extent the Trust Account reflects asset valuations different than their acquisition date of November 20, 2017, the Account is not properly stated and is inaccurate.

*See* Appellees' Objections at 4.

With respect to the **Estate**, Appellees objected to payment of $101,723.11 for carrying and maintenance costs for the Abington property. Appellees averred the property should have been sold promptly after Decedent's death, and furthermore that Appellant has allowed the property to fall into disrepair, thereby decreasing its value. Appellees' Objections at 8. Finally, Appellees requested that Appellant be surcharged for excessive and unreasonable attorneys' fees in both the Trust and Estate matters. *Id.* 10.

Subsequently, on October 18, 2018, Appellant transferred Decedent's Abington property to the Trust. Trial Ct. Op. at 3. On February 22, 2019, he transferred the Long Beach Island property to the Trust. *Id.* Meanwhile, "[t]itle to the commercial property remains with BCEDC." *Id.*, *citing* N.T., 10/22/19, at 7.

On October 22, 2019, the trial court conducted a hearing on Appellees' objections. At that time, Robin was 67 years old and Deborah was 66 years old.[6] N.T., 10/22/19, at 159, 196. When asked why she initiated the litigation, Deborah testified:

> It had been about eight-and-a-half years and I did not feel that my father's wishes were being carried forth. I felt there was abuse of the power that was invested in [Appellant]. I did not feel he was doing his job. Our trusts never got set up. Nothing really ever got done from where I was sitting.

---

[6] Appellant's age is not readily apparent from the record.

*Id.* at 176.

The trial court summarized that at the time of the hearing,

Appellant had neither created equal beneficiary share accounts nor made distributions in accordance with the trust provisions, even though [Appellees] were retired [from working]. Appellant admitted that . . . payment[s] of trust distributions are "controlled by the trust [terms]," but . . . he never asked about [Appellees'] retirement status, based on his questionable opinion that he had no obligation to inquire. [N.T., 10/22/19, at 151-53.] Appellant based his 2017 decision to withhold initial distributions from the trust due to the beneficiaries' receipt of "substantial amounts of after-tax funds" from their mother's estate and the lack of a "pressing need for distributions."

Trial Ct. Op. at 3 (some record citations omitted).

Furthermore, Deborah testified she informed Appellant of her desire to sell the Abington property, which was "older . . . and everything [in it] was quite old." N.T., 10/22/19, at 161-62. However, the house was not sold, and both "the residential and shore properties held by the trust remained non-income producing assets." Trial Ct. Op. at 4. Meanwhile, "[n]o evidence was presented regarding the income potential for [the] commercial property." *Id.*

The trial court further found:

Appellant explained his delay in funding the trust was two-fold: first, he was busy with an IRS audit of [D]ecedent's estate between 2013 and 2014, and second, [Appellees] were not retired or "even of retirement age." [N.T., 10/22/19, at 129-30.] The **Court finds this explanation unacceptable and determines that Appellant breached his fiduciary duty by failing to fund the trust in a timely manner**.

Trial Ct. Op. at 3 (emphasis added).

On June 25, 2020, the trial court held a second hearing, on the attorneys' fees issues, including the questions of whether Appellant's attorney fees should be borne by the Trust and the Estate.

On November 4, 2020, the trial court issued the underlying 15-page "adjudication" in the Trust matter, and on the following a day, a nearly identical "adjudication" in the Estate matter. Pertinently, the court sustained Appellees' objections to Appellant's failure to fund the Trust until November of 2017, and failure to establish separate shares for each beneficiary upon Decedent's death. Adjudication of Trust, 11/4/20, at 7. The court found no surcharge could be assessed against Appellant as **trustee**, "because no specific dollar figures for losses were established." *Id.* at 7-8. However, the court surcharged Appellant, as **executor** of the Estate, his executor's commission of $37,537.21, for this "failure to fund the trust in a timely manner." *Id.* at 9. As stated above, the trial court rejected Appellant's reasons for the delay in funding the trust and found he "breached his fiduciary duty by failing to fund the trust in a timely manner." Trial Ct. Op. at 3.

Pertinent to this appeal, the court sustained Objection #8, finding an "inaccurate valuation of trust assets." Adjudication of Trust at 8. The court thus surcharged Appellant "the difference between the value of trust assets (formerly in the estate) as of the date of death and the accurate value of trust assets as of November 30, 2017 (the end of the accounting period)." *Id.* The court also surcharged Appellant with carrying costs for the Abington property,

- 10 -

where the property had not been "in use and all parties agreed it would be sold." Trial Ct. Op. at 6 (record citation omitted).

Appellant filed separate, timely notices of appeal from each adjudication, and complied with the trial court's orders to file Pa.R.A.P. 1925(b) statements of matters complained of on appeal. In its opinion, the trial court stated, *inter alia*, the amount of the surcharge against Appellant, with respect to Objection #8, was $1,748,097.17. Trial Ct. Op. at 7.

### III. Statement of Questions Involved

Appellant presents four issues for our review:

1. Did the trial court err as a matter of law and abuse its discretion when, *sua sponte* and after the pleadings had closed and hearings concluded, it created a claim no one made, applied a measurement no one suggested, and surcharged [Appellant] for harm that did not occur?

2. Did the trial court abuse its discretion and err as a matter of law when it surcharged [Appellant] for the "carrying costs" of real estate which such real estate the trial court also held he could properly retain as an investment?

3. Did the trial court abuse its discretion and err as a matter of law in depriving [Appellant] of any Executor commission in the absence of a finding that he harmed the Estate or Trust at issue in this litigation?

4. Given that [Appellant] successfully defended his actions as Executor of the Estate and Trustee of the Trust, should the trial court have reduced his attorneys' fees twice via methodologies that were redundant of each other?

Appellant's Brief at 10.

Before addressing Appellant's four issues *seriatim*, we observe they include the same two overarching claims. First, Appellant insists that for

"accounting and damages purposes," the Estate and Trust must be considered

the same entity.  **See** Appellant's Brief at 2, 23, 34-36, 45.  He reasons:

> The Trust and Estate exist and were created as part of one wealth transfer plan.  The Estate, in its entirety, "pours" into the Trust.  The Estate has no beneficiaries other than the Trust.  The Trust is funded exclusively with Estate assets.  [Appellant is both t]he Executor of the Estate [and] the Trustee of the Trust.

**Id.** at 35.  Appellant presents the following analogy:

> [T]he Estate and the Trust are left and right pockets, respectively, in a pair of Estate and Trust pants.  If an expense is paid from the left pocket which could or should have been paid out of the right pocket, it makes no difference.  Each dollar spent from the left pocket is a dollar saved to the right pocket.  Ultimately every dollar in the left pocket makes its way to the right pocket.  No harm has occurred.

**Id.** at 2-3.  Appellant concludes that when the Estate and Trust assets are

considered together in this manner, "all initial Estate assets and income were

present and accounted for."  **Id.** at 23.

Second, Appellant avers he "did nothing to harm the Estate and Trust."

**See** Appellant's Brief at 1, 3, 23-25, 29, 32, 34-35, 40, 44, 50; Appellant's

Reply Brief at 1, 3, 11.  We will address these arguments as they arise in the

issues below.

## IV.  Standard of Review & Relevant Law

Our standard of review of an Orphan's Court findings is deferential.

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support.  This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom

the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

When the trial court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous. . . . If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Estate of Warden*, 2 A.3d 565, 571 (Pa. Super. 2010) (citations omitted).

With respect to the administration of an estate, this Court has stated:

. . . "An executor . . . is an officer of the orphans' court and accountable to such court for all his actions of commission and omission in the performance of his fiduciary duties."

By statute, one aspect of the fiduciary duty of the executor is to "take possession of, maintain and administer all the real and personal estate of the decedent . . . ." 20 Pa.C.S.A. § 3311. In other words, the executor bears the responsibility to "preserve and protect the property **for distribution to the proper persons within a reasonable time**." In the performance of his fiduciary

- 13 -

duties, the executor must exercise the "judgment, skill, care and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs."

*In re Estate of Westin*, 874 A.2d 139, 144 (Pa. Super. 2005) (some citations omitted and emphasis added). An executor's "duty includes the responsibility to distribute the estate promptly. 20 Pa.C.S.A. § 3316[.]" *In re Estate of McCrea*, 380 A.2d 773, 776 (Pa. 1977) (some citations omitted).

> When the executor of an estate fails to fulfill his fiduciary duty of care, the court may impose a surcharge against him. A surcharge is a penalty imposed to compensate the beneficiaries for loss of estate assets due to the fiduciary's failure to meet his duty of care; however, a surcharge cannot be imposed merely for an error in judgment. Our Supreme Court has held that a standard of negligence is applied when evaluating whether an executor's management of an estate warrants a surcharge.

*Estate of Westin*, 874 A.2d at 144.

> With respect to the administration of a trust, this Court has explained:
>
> "A trust is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person . . . ." [*See*] Restatement (Second) of Trusts, § 2[.] The settled law in Pennsylvania is that "the pole star in every trust . . . is the settlor's . . . intent and that intent must prevail."
>
> The trust's specific provisions govern the trust's operation. 20 Pa.C.S. § 7705(a).

*Estate of Warden*, 2 A.3d at 572 (some citations omitted).

We note the following principles governing a trustee's duties and surcharges:

> "The primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal." "The

standard of care imposed upon a trustee is that which a man of ordinary prudence would practice in the care of his own estate." Surcharge is the remedy when a trustee fails "to exercise common prudence, skill and caution in the performance of its fiduciary duty, resulting in a want of due care."

The court must find the following before ordering a surcharge: (1) that the trustee breached a fiduciary duty and (2) that the trustee's breach caused a loss to the trust. Where there is no breach of fiduciary duty, there is no basis for a surcharge. Even if there is a breach of duty, however, where there is no loss, there is no basis for a surcharge.

*Estate of Warden*, 2 A.3d at 573 (citations and footnote omitted).

## V. $1.7 Million Surcharge for Discrepancy in Valuation of Trust

In his first issue, Appellant challenges the trial court's surcharge of $1,748,097.17. First, he argues that when the court sustained Appellees' Objection #8, the court cited "the inaccurate valuation of trust assets," but "did not opine as to" what the "accurate value" should have been, nor could it have, as Appellees "never proved a difference in value as to any of the assets listed both in the Estate and Trust Accounts." Appellant's Brief at 31. The court also did not specify any amount for the surcharge against him. *Id.* Appellant contends that subsequently, in its Rule 1925(a) opinion, "the trial court went thermonuclear." *Id.* at 32. He asserts the court improperly "rewrote Objection #8 as a claim no one made to seek damages no one sought via an 'apples-to-oranges' methodology no one suggested[.]" *Id.* In support, Appellant argues:

> [Appellees] never pleaded or argued that a difference between the value of the Estate's assets and income and the Trust's initial funding value was improper or provided a basis for surcharge. To

the contrary, [Appellees] focused Objection 8 on what appears — but most certainly is not — inconsistent values assessed to specific assets at two different times.[ ]

*Id.* at 33-34. Appellees "specifically were referring to transferred assets such as American Electric Power stock." *Id.* at 30. However, at the hearing, they "presented no evidence as to the value, if any, that [Appellant] should have reported [for] a given asset in the Trust Account as of November 20, 2017.[ ]" *Id.* at 31.

Furthermore, Appellant argues, "the trial court's failure to recognize that the Estate and Trust are, essentially, the same entity for financial purposes led it to apply a simplistic apples-to-oranges metric[.]" Appellant's Brief at 34. He maintains:

> When the Trust and Estate are considered as a whole, . . . no unexplained differential exists between (a) the Estate's December 2015 "value" of $6,644,641.76 and (b) the combined value of both the Trust and Estate as of November 30, 2017.[ ]
>
> As of November 2017, the Estate was valued at $1,393,328.37[ and] the Trust was valued at $4,957,744.36.[ ] Together, the Trust and Estate contained $6,351,072.73, leaving what appears to be a gap of just under $300,000 between Estate "value" and combined Trust and Estate value. That gap, however, disappears when one considers that [Appellant] made $195,000 in principal disbursements (expenses), . . . made income distributions of $60,000, and . . . converted $40,000 in income to principal.

*Id.* at 36-37 (paragraph break added and emphases omitted).

In response, Appellees reject Appellant's rationale "that the [E]state and Trust were one and the same for financial purposes simply because one funds the other." Appellees' Brief at 16. They maintain:

> There is no error in assessing that surcharge, as the amount perfectly reflects the loss to the Trust at the end of the accounting period resulting from [Appellant's] failure to timely act.

> *    *    *

> In focusing exclusively on expenses, [Appellant] ignores that his refusal to fund the Trust completely denied the Trust's primary beneficiaries of any possibility of receiving distributions pursuant to . . . the Trust. . . .

*Id.* After careful review, we vacate the surcharge and remand.

We first review Appellees' Objection #8 and the trial court's analyses in detail. The objection, which prompted the surcharge, was articulated as follows:

> 8. Objection is made to [Appellant's] valuations of the Trust's assets, which, as stated, are identical to the valuations of the same assets in the Estate Account, although at different valuation dates. To the extent the Trust Account reflects asset valuations different than their acquisition date of November 20, 2017, the Account is not properly stated and is inaccurate.

Appellees' Objections at 4.

We observe Appellees' objection cited no specific assets or dollar figures and it consisted of only two sentences. We construe the following from the objection: Appellees acknowledged the valuation of the Trust assets was "identical" to that of the Estate assets. *See* Appellees' Objections at 4. However, Appellees pointed out the November **30**, 2017, value of the Trust assets differed from the value as of their November **20th** transfer. *See id.* Thus, Appellees concluded, the November **30th** valuation was "not properly stated and is inaccurate." *See id.*

- 17 -

In sustaining Appellees' objection, the sum of the trial court's discussion was:

> Objection #8 regarding the inaccurate valuation of trust assets is SUSTAINED. [Appellant] is surcharged the difference between the value of trust assets (formerly in the estate) as of the date of death and the accurate value of trust assets as of November 30, 2017 (the end of the accounting period).

Adjudication of Trust at 8.

From this brief statement, likewise two sentences long, we extrapolate that the court found Appellant provided an "inaccurate valuation of trust assets." Adjudication of Trust at 8. However, although it cited Appellant's "inaccurate valuation of trust assets," "the value of trust assets (formerly in the estate) as of the date of death," and "the accurate value of trust assets as of November 30, 2017," the court provided no discussion of what any of these amounts should have been. Furthermore, as Appellant points out, the court's analysis did not set forth the amount of the surcharge to be imposed against him. *See* Appellant's Brief at 31.

Subsequently, in its Rule 1925(a) opinion, the trial court addressed this issue as follows:

> The Estate Accounting reflects that the value of the Decedent's estate, which was subsequently transferred to the trust, totaled an amount of $6,644,641.76.

> The Trust Accounting, however, reflects the correct amount of $4,896,544.59 as of November 30, 2017, the end of the accounting period. No testimony was received at trial validly addressing this discrepancy.

- 18 -

"[A] surcharge may be imposed on the executor to compensate the estate for any losses incurred by the executor's lack of due care." [**In re Estate of Geniviva**, 675 A.2d 306, 311 (Pa. Super. 1996).[7]]

**Due to Appellant's failure to maintain accurate records in the Accountings filed, he may be surcharged in accordance with the amount of losses incurred.** The difference between the Estate Accounting value and Trust Accounting value is a total of $1,748,097.17, and Appellant accordingly may be surcharged this difference.

Trial Ct. Op. at 6-7 (emphasis and paragraph breaks added). We review these paragraphs *seriatim*.

First, the trial court's statement, that "the value of the Decedent's estate, which was subsequently transferred to the trust, totaled an amount of $6,644,641.76," is not entirely clear. Trial Ct. Op. at 6. To the extent the court meant that **$6,644,641.76** of Estate assets were transferred to the Trust, the record shows, and the parties do not dispute, that the transferred assets totaled **$4,957,744.36**. *See* First Account of Trustee at 3. Instead, the $6,644,641.76 figure cited by the trial court is the value of the "Gross Estate" — or total value of all Estate assets ever — as reported on the first page of the Estate accounting. *See* First & Final Account of Executor at 1.

Meanwhile, the Trust accounting did show a current market value of Trust assets (as of November 30, 2017) of $4,896,544.59. *See* Trial Ct. Op.

_____

[7] We note that although the court surcharged Appellant in his capacity as **Trustee**, the court cited law (**Estate of Geniviva**) that pertained to a surcharge against an **executor** of an estate. *See* Trial Ct. Op. at 6-7.

at 6. The trial court's opinion stated it was surcharging Appellant the difference ($1,748,097.17) between this amount and the "Gross Estate." We extrapolate that the court intended to surcharge Appellant the amount of Estate assets that have not yet been transferred to the Trust.[8] While Appellant's failure to transfer the assets was the crux of Appellees' claim, we agree with Appellant that this failure was not cited in the trial court's adjudication (which instead had found "inaccurate valuation") nor Rule 1925(a) opinion (which cited a "failure to maintain accurate records"). *See* Appellant's Brief at 32-33.

Nevertheless, as stated above, it is clear the crux of Appellees' claim was that Appellant failed to timely transfer Estate assets and failed to make Trust distributions to the beneficiaries. The trial court found Appellant should be surcharged $1,748,097.17, "the amount of losses incurred." Trial Ct. Op. at 7. We thus consider this finding — that Appellees suffered a loss totaling $1,748,097.17. *See Estate of Warden*, 2 A.3d at 573 (before ordering a surcharge, a court must find both: (1) the trustee breached a fiduciary duty; and (2) the trustee's breach caused a loss to the trust).

_____

[8] This is Appellees' understanding of the surcharge amount. *See* Appellees' Brief at 16 ("The trial court's surcharge was the amount that [Appellant], as executor, still refused to transfer from the estate to the Trust at the end of the accounting period and which [Appellant], as trustee, failed to collect from the estate, after nearly seven years.").

First, we reject Appellant's repeated contentions that the Trust and the Estate are the same entity. Notably, he presents no legal authority in support. *See* Pa.R.A.P. 2119(a) (argument shall include discussion of issue and citation of authorities as are deemed pertinent). It is true that Decedent was both the settlor of the Trust and the testator in the Estate, Appellant was both the trustee and executor, and all of the Estate assets should have poured into the Trust. However, these facts alone do not compel or permit the courts to consider the Trust and Estate together as one entity.

Nevertheless, we are persuaded by Appellant's rationale that, between the Trust and Estate accountings, no assets have been "lost" or unaccounted for. We acknowledge Appellees' claim that due to Appellant's failures to act, they have been denied Trust distributions. We further observe that on appeal, Appellant offers no justification or explanation why he did not transfer any Estate assets for more than six and a half years following receipt of letters testamentary, nor why — 10 years after Decedent's death — more than $1.7 million of assets continue to remain in the Estate.

However, we emphasize the absence of any allegation of fraud or dissipation of assets. Appellees made no claim that Estate or Trust assets were unaccounted for or that Appellant was concealing assets. Instead, their claim was that Appellant has failed to transfer certain assets, which they agree remain in the Estate. While we do not disturb the trial court's finding that "Appellant breached his fiduciary duty by failing to fund the trust in a timely

manner," *see* Trial Ct. Op. at 3, we disagree with its finding that Appellees have suffered a $1.7 million loss. Appellees have not alleged they suffered permanent loss. The vast majority of the assets are stocks and other shares and not, for example, specific items that cannot be replaced.[9]

Additionally, we consider the large amount of the surcharge — more than $1.7 million. The trial court made no mention that it considered any alternatives before imposing the surcharge, for example directing Appellant to transfer the remaining Estate assets.[10] Such action would have brought Appellees closer to their requested relief, which was transfer of the Estate assets and distributions from the Trust. Under the particular, undisputed facts presented, we conclude the trial court erred in finding Appellees suffered a loss that supports a $1,748,097.17 surcharge against Appellant. ***See Estate of Warden***, 2 A.3d at 573. Accordingly, we vacate that surcharge.

We note that following the remand of this record to the trial court, the administration of the Estate and Trust shall continue, as neither have concluded. As stated above, the trial court may consider: directing Appellant,

_____

[9] We reiterate that Appellees did not desire to use or inherit the Abington property. **See** N.T., 10/22/19, at 161-62. With respect to the Long Beach Island property, the trial court cited "uncontested evidence that Appellant made the [shore house] property available to all beneficiaries[.]" Trial Ct. Op. at 6.

[10] It also appears that neither the parties nor the trial court addressed the fact that Appellant himself is a Trust beneficiary and thus may also benefit by receiving Trust distributions.

as executor, to transfer the remaining Estate assets to the Trust; directing Appellant, as Trustee, to create sub-trusts for the benefit of each Trust beneficiary; undertaking any action it deems proper to effectuate the fair and prompt administration of the Estate and the Trust. The parties may decide to resolve any issue concerning the commercial property in Bucks County. Our disposition today is simply to vacate the approximately $1.7 million surcharge. The trial court and parties may revisit the issue of executor's and trustee's surcharges, following further administration of the Trust and the Estate.

## VI. Surcharge of Carrying Costs for Abington Property

In his second issue, Appellant avers the trial court improperly surcharged him carrying costs, from December 2015 through November 2017, of the Abington property. For ease of review, we first set forth the following background information. Appellant's accounting of the Estate included $101,723.11 of expenses for the Abington property, for property taxes, grounds maintenance, and water, telephone, and utility services. Appellees objected (Objection #21), arguing:

> None of those expenses should have been incurred as [Appellant] should have cleaned out and sold [the property] promptly after [D]ecedent's death in 2011. In failing to properly administer that asset, [Appellant], in violation of his fiduciary duties, incurred and continues to incur each of [these] unnecessary and wasteful expenses[,] while allowing the real estate [to] fall into a state of disrepair, causing additional loss to the estate in terms of market value. . . .

Appellees' Objections at 8. As stated above, Appellant transferred the property to the Trust in October 2018.

- 23 -

The trial court sustained Appellees' objection in part, surcharging Appellant with the carrying costs incurred after December 31, 2015. Adjudication of Estate at 9. Subsequently, in its opinion, the trial court stated its findings that the "Abington property was not in use" and was not income-producing, "and all parties agreed it would be sold." Trial Ct. Op. at 4, 6. The court stated its "imposition of surcharges is related to [Appellees' objection to the **Trust**], but specifically refers to **[E]state** expenses incurred in maintaining the Abington . . . property." **Id.** at 6 (emphasis added). In support, the court cited the 2015 Release, which Appellees executed with the "understanding that the [E]state would be distributed immediately afterwards, which . . . did not occur." **Id.** The court thus imposed the surcharge, finding "Appellant's actions do not fall within the scope of discretion to make investment decisions[.]" **Id.** In contrast, we note, the court "permitted expenses incurred relating to the Long Beach Island property in light of uncontested evidence that Appellant made the vacation property available to all beneficiaries[.]" **Id.**, *citing* N.T., 10/22/19, at 139, 162-63.

On appeal, Appellant emphasizes the trial court surcharged him, as executor of the Estate, for the carrying costs while also holding that he, as trustee, "could retain [the] Abington [property] once transferred" to the Trust. Appellant's Brief at 39. Appellant acknowledges the trial court's drawing a distinction between his actions as executor and as trustee. **Id.** at 40. However, he contends, "the Estate paying carrying costs did not harm the

Estate's ultimate and only beneficiary, the Trust. To the contrary, it benefitted the Trust. . . . Again, this is left pocket/right pocket." *Id.* Appellant reasons that had he transferred the property to the Trust earlier, the Trust would have borne all the carrying costs. *Id. See also id.* at 41 ("[E]ach dollar the Estate paid in these two years was a dollar the Trust saved for the same two years. Either way . . . the cash on hand in the Trust as of November 2017 is the same. The carrying costs are a wash."). We conclude that no relief is due.

First, we note Appellant provides no citation to the record in support of his contention the trial court explicitly "held" the Trust could retain the Abington property. *See* Appellant's Brief at 39. Second, Appellant's argument wholly ignores the trial court's finding that the parties agreed the property would be sold. *See* Trial Ct. Op. at 6. Had the property been sold, neither the Estate nor the Trust would have been burdened with any carrying costs, and Appellant's "left pocket/right pocket" argument is thus meritless. *See* Appellant's Brief at 40. We further observe there was no testimony that the value of the Abington property increased or decreased since Decedent's death. Appellant offers no explanation why he has chosen to retain the Abington property nor why he has not attempted to rent said property to make it an income-producing asset. As stated above, an executor bears a duty to distribute the estate promptly and to "preserve and protect the property for distribution to the proper persons within a reasonable time." *See Estate of McCrea*, 380 A.2d at 776; *Estate of Westin*, 874 A.2d at 144. Accordingly,

- 25 -

we affirm the surcharge against Appellant of $101,723.11, representing the carrying costs, paid by the Estate, for the Abington property incurred after December 31, 2015.

At this juncture, we again note that upon remand of this record the trial court may consider directing Appellant — or Appellant may, of his own accord, decide in his capacity as Trustee — to sell the Abington and/or Long Beach Island property. The issue of the ownership and/or transfer of the Buck County commercial property may also be reviewed by the parties or trial court.

## VII. Denial of Executor Commission

In his third issue, Appellant challenges the trial court's surcharge against him "for the entire $37,537.21" executor's commission. Appellant's Brief at 41. We first note Appellees objected to Appellant's executor's commission, as well as his proposed additional commission of $15,000 (Objection #19). Appellees' Objections at 7. Appellees averred Appellant failed to administer the Estate in accordance with Pennsylvania law and breached his fiduciary duties by, *inter alia*, refusing to transfer Estate assets to the Trust. **Id.**

On appeal, Appellant avers the court cited his "putative 'delay,'" as **executor** of the Estate in funding the Trust, but in its opinion, the "court switched reasons[ ]" and stated it denied the "commission because of his 'failure,' as **Trustee**, to make Trust distributions." Appellant's Brief at 41-42 (footnote omitted). Appellant contends neither rationale was proper. First, he denies there was any delay in funding the trust, as Appellees executed the

- 26 -

release agreement in 2015, thereby "waiv[ing] any claims related to Estate administration from 2010 through December 2015[,]" and "agree[ing] that the Trust would be funded 'after' the distributions made under the Release Agreement occurred.[ ]" *Id.* at 43. Second, Appellant asserts the court, in its opinion, erred in citing Appellant's actions as **trustee** as a reason to deny him **executor** fees. *Id.* at 45. He also alleges, in the alternative, that if his actions as trustee were relevant, he did not fail to make Trust distributions because the Trust did "not mandate distributions." *Id.* at 46. Appellant alleges: "At most, the Trust states [Decedent's] 'intent' and 'wish' that the Trust 'provide a significant retirement income' to the Beneficiaries[,]" and this language does "not bind a Trustee." *Id.* We conclude relief is due.

> This Court has stated:
>
> When the executor of an estate fails to fulfill his fiduciary duty of care, the court may impose a surcharge against him. **A surcharge is a penalty imposed to compensate the beneficiaries for loss of estate assets** due to the fiduciary's failure to meet his duty of care; however, a surcharge cannot be imposed merely for an error in judgment. Our Supreme Court has held that a standard of negligence is applied when evaluating whether an executor's management of an estate warrants a surcharge.

*In re Estate of Westin*, 874 A.2d 139, 144 (Pa. Super. 2005) (citations omitted and emphasis added)).

First, in its adjudication, the trial court sustained Appellees' objection to the **executor's** commission "due to [Appellant's] failure to fund the trust in a

timely manner."[11] Adjudication of Estate at 9. First, regardless of the court's assessment of whether Appellant's conduct was improper, the court made no finding that his actions — not transferring Estate assets to the Trust in a timely manner — resulted in a "loss of estate assets." *See Estate of Westin*, 874 A.2d at 144. We would conclude there was no such loss to Appellees in their capacity as beneficiaries of the Estate. Thus, the court's rationale does not support a surcharge.

Secondly, we observe the court's Rule 1925(a) opinion discussed only Appellant's actions as **trustee** of the Trust:

> The surcharge is imposed due to Appellant's intentional failure to fulfill his fiduciary duties in accordance with the **Trust** terms. At the time of trial, Appellant had neither created equal beneficiary share accounts nor made distributions in accordance with **Trust** provisions, even though [Appellees] were retired. Appellant admitted that his payments of **trust** provisions are "controlled by the **trust** [terms]," but testified that he never asked about [Appellees'] retirement status, based on his opinion that he had no obligation to do so. [N.T., 10/22/19, at 151-53.] Contrary to the **trust's** directives, Appellant based his 2017 decision to withhold initial distributions from the **trust** on the beneficiaries' receipt of "substantial amounts of after-tax funds" from their mother's estate and the lack of a "pressing need for distributions." [*Id.* at 53-54.]

Trial Ct. Op. at 7 (emphases added).

---

[11] The trial court both surcharged Appellant his $37,537.21 executor's commission and denied his request for an additional $15,000 commission. Adjudication of Estate at 9.

We conclude this discussion of Appellant's duties as **trustee** of the Trust does not support the surcharge of Appellant's commission as **executor** of the Estate. Alternatively, even if we were to consider whether Appellant fulfilled his duties under the Trust, we would incorporate our above discussion, regarding the $1.7 million surcharge, and conclude Appellees have not suffered a "loss" that would support a surcharge. ***See Estate of Warden***, 2 A.3d at 572. Accordingly, we reverse the surcharge of the $37,537.21 Estate executor's commission against Appellant. Because we remand this case and Appellant may or may not undertake further activity as executor, we vacate the denial of his request of an additional $15,000 commission. The trial court may reconsider this request on remand.[12]

## VIII. Attorneys' Fees

In his final issue on appeal, Appellant challenges the trial court's partial denial of his request for attorneys' fees, to be paid to Robert Balter, Esquire, and the law firm Mannion Prior. For ease of review, we first set forth the relevant legal authority. This Court has stated:

> Our ability to review the grant of attorney's fees is limited, and we will reverse only upon a showing of plain error. Plain error is found where the decision is based on factual findings with no support in the evidentiary [record] or legal factors other than those that are relevant to such an award.

___

[12] We offer no opinion as to whether Appellant should be granted the additional requested commission.

***Holz v. Holz***, 850 A.2d 751, 760 (Pa. Super. 2004) (citations omitted).

In ***In re LaRocca's Trust Estate***, 246 A.2d 337 (Pa. 1968) (***LaRocca***), the Pennsylvania Supreme Court set forth factors to be considered when assessing attorneys' fees:

> What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question. The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

***Id.*** at 339 (footnote omitted).

In the instant matter, the trial court conducted a hearing on June 25, 2020, regarding attorneys' fees. At that time, Appellant had already paid all legal fees to Attorney Balter and Mannion Prior in full with Trust funds. Adjudication of Trust at 10. Attorney Balter testified. The trial court summarized the evidence presented:

> [Attorney] Balter, a solo practioner, began assisting [Appellant] in December of 2013. Prior to engaging [Attorney] Balter, [Appellant] had retained the services of another attorney who, for a period of two years, was unsuccessful in completing the estate tax audit. [N.T., 6/25/20, at 34.] By June 2014, the estate received a refund from the IRS and a closing letter, finalizing the effort. [Attorney] Balter then assisted in the transfer of estate assets to the trust. [***Id.*** at 36-37.]
>
> [Attorney] Balter was complicit with [Appellant's] unreasonable efforts to delay trust distributions to the

beneficiaries. Despite the protestations of [the] trust beneficiaries and his vast background in trust and estate administration, [Attorney] Balter "suggested [Appellant] needed a reasonable basis" for distribution, so he prepared a questionnaire for beneficiaries to complete and was paid for it. [N.T., 6/25/20, at 38.] The questionnaire was a useless set of intrusive questions that did not focus on the settlor's express purpose of supplementing the retirement income of the beneficiaries.[13] (Exh. A-10). [Attorney] Balter also assisted in the preparation of trust "minutes," which did not enable or further clarify the issue of trust distributions. [N.T., 6/25/20, at 57.]

Throughout this litigation, [Attorney] Balter attended the proceedings in order gain information "as to what reasonable distributions might be." [N.T., 6/25/20, at 40.] Yet, by the time of the hearing, the distributions never materialized. [*Id.* at 57.] [Attorney] Balter continues to assist [Appellant's] efforts, more recently researching a more profitable jurisdiction for the trust site and pursing his personal appointment as a trustee. [*Id.* at 40-41, 59.]

Adjudication of Trust at 11.

Karl Prior, Esquire, a principal of the law firm Mannion Prior, also testified. The trial court summarized:

[Attorney Prior] submitted an unsigned, undated engagement agreement that set forth the scope of the firm's representation[, and] invoices showing the amounts billed from April of 2017 through May 21, 2020. (Exh. [D-1,] D-4). Several attorneys within the firm assisted [Appellant's] efforts, all at varying hourly wages that increased annually. [N.T., 6/25/20, at 7-8, 27-28.] An attorney outside of the firm prepared the estate and trust accounts at a cost of $1,750. [*Id.* at 16-17.]

---

[13] Deborah testified she did not complete this questionnaire, which asked about her income, real estate holdings, and "net worth." N.T., 10/22/19, at 169. She believed the questionnaire "was very invasive" and "it seemed very risky to fill out any personal information . . . to share with" Appellant, and felt the information "would be abused." *Id.*

No evidence was received regarding the value and reasonableness of [A]ttorney Balter and the Mannion firm working jointly, neither was evidence presented justifying the added expense to the trust for this collaboration. The issue of possible duplication efforts was not addressed at trial, although the overlapping time periods are reflected on submitted invoices.

Adjudication of Trust at 11-12 (paragraph break added).

The trial made the following findings with respect to the ***LaRocca*** factors:

- The amount of work performed. [Mannion Prior] billed for hours by a total of 6 personnel for a total fee of $170,000[.]

- The character of the services rendered. Competent counsel performed the legal work, however there was no evidence presented at trial justifying the number of attorneys involved, particularly throughout the litigation process.

- The difficulty of the problems involved. There were no complex, novel or technical questions of law involved in the litigation. Estate administration included complicated tax and property title issues.

- The amount of money or value of the property in question. The total balance set forth in the estate and the trust account is valued at nearly $5,000,000[.]

- Whether the fund involved was "created" by the attorney. No fund was created by counsel seeking Court approval for legal fees.

- The professional skill and standing of the attorney in his profession. Legal services were provided by attorneys of varying skill levels within the firm. The Mannion firm and [A]ttorney Balter have extensive experience and reputations as experts in the field.

- The results the attorneys were able to obtain. Despite considerable efforts at settlement, trial preparation and litigation, trust attorneys were unable to justify adequately or mitigate trustee's failure to make distributions to trust beneficiaries and numerous surcharges are being assessed as a result.

• The ability of the client to pay a reasonable fee for the services rendered. As noted above, there are adequate funds to pay reasonable fees for services for the work performed.

Adjudication of Trust at 12-13.

According to Appellant, he paid Attorney Balter $66,500. Appellant's Brief at 47. However, the trial court determined the appropriate legal fees and costs for this attorney totaled $41,480.32 ($40,199 for legal fees and $1,281.32 for expenses). Adjudication of Trust at 13. As stated above, Mannion Prior presented invoices totaling $170,000. The trial court instead awarded $91,300.44 ($90,525 for legal fees and $775.44 for expenses). *Id.*

Separately, the trial court assessed Appellant a surcharge of half of the approved legal fees:

Due to his unreasonably dilatory conduct and his failure to honor or fulfill his fiduciary duties, [Appellant] shall be surcharged one-half (50%) of the legal fees approved herein for Attorney Balter and Mannion Prior, LLP.

Adjudication of Trust at 13.

On appeal, Appellant avers the trial court erred in not awarding the full amount of attorneys' fees requested. He reasons that of the 13 objections sustained by the trial court, "six . . . related to legal fees. Those Objections cannot . . . factor into *LaRocca*. Otherwise, *LaRocca* becomes circular: in considering fees to award, the trial court would be considering success on defending an Objection to fees." Appellant's Brief at 50. Appellant also argues that if this Court reverses the other surcharges challenged in this appeal, we

should also remand for the court to re-apply the *LaRocca* factors. *Id.* Lastly, Appellant asserts the trial court improperly "double-punished him for conduct" which was also the basis for the surcharges.[14] *Id.* Appellant maintains his conduct "did not harm the Estate or Trust. **At all.** [sic]." *Id.*

In light of our dispositions above, including the vacating of the $1.7 million surcharge against Appellant, and again in considering that administration of the Trust and Estate will continue, we vacate the trial court's rulings with respect to attorneys' fees and remand for the trial court to

_____

[14] The trial court addressed Appellant's claim of an improper "double count" of *LaRocca* factors against him:

> In its Adjudication, the court distinguishes reduced counsel fees payable by the trust from surcharges on Appellant, though they are referred to in the same section which discusses legal fees. Appellant has been surcharged 50% of counsel's legal fees due to his failure to honor and fulfill his fiduciary duty, which was extensively discussed in the sections preceding the legal fees section, where . . . the court explained that the surcharge amount would be later discussed in the legal fees analysis.
>
> Additionally in the legal fees section, based on its analysis of the *LaRocca* factors, the court has determined the reduced amount of legal fees payable by the trust. For the reader's convenience, the court has listed Appellant's surcharge amount and the amount of reduced counsel fees together in the same section. Accordingly, Appellant has not been charged twice for the same *LaRocca* factor.

Trial Ct. Op. at 10 (paragraph break added). Because we remand, we offer no opinion on this issue.

reconsider the parties' various arguments.[15] The parties and the trial court may also consider any new matters that have arisen since this appeal was taken. In sum, we vacate the trial court's award of attorneys' fees and the surcharge of half the attorneys' fees against Appellant, and remand for the court to reconsider.

## IX. Conclusion

For the foregoing reasons, we: (1) vacate the surcharge of $1,748,097.17 against Appellant; (2) affirm the surcharge of carrying costs of the Abington property; (3) reverse the surcharge of the executor's commission of $37,537.21; (4) vacate Appellant's request of an additional $15,000 in executor's commission, where the trial court may revisit this request on remand; and (5) vacate the court's attorneys' fees rulings, and remand for the court to consider attorneys' fees in light of this memorandum and any new issues arising in the Trust and Estate matters during this appeal.

Orders affirmed in part, reversed in part, and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[15] We offer no opinion as to the merits of Appellant's argument on this issue; we merely vacate and remand in light of our disposition of his other claims on appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/19/2022